**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| INGENIOSPEC, LLC, | § § | |
| Plaintiff, | § § | Civil Action No. 1:25-cv-00867 |
| | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| APPLE INC., | § § | |
| Defendant. | § § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IngenioSpec, LLC ("IngenioSpec") brings this patent infringement action against Defendant Apple Inc. ("Defendant" or "Apple") as follows:

**NATURE OF THE ACTION**

1. This is a civil action for infringement of U.S. Patent Nos. 8,582,789 ("the '789 Patent"), 11,644,693 ("the '693 Patent"), and 11,921,355 ("the '355 Patent"), (collectively, "Asserted Patents") under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. The Asserted Patents relate to wireless communications devices, wearable hearing devices, and/or audio systems.

2. Apple's products accused of infringement are wireless communication devices, wearable hearing devices, and/or hearing enhancement systems, *e.g.*, Apple AirPods and AirPods Pro, imported, used, offered for sale, and/or sold by Apple to customers in the United States.

**THE PARTIES**

3. Plaintiff IngenioSpec, LLC is a limited liability company organized and existing under the laws of the State of California, with offices located at 1825 Morrow Avenue, Waco, TX

76707 and 4010 Moorpark Avenue, Ste. 211, San Jose, CA 95117.

4. IngenioSpec has pioneered innovations in wearable electronics for over a decade. The cutting-edge wearable technology developed by IngenioSpec seamlessly integrates electronics into the wearable electronics for a variety of useful purposes that improve consumers' everyday lives.

5. IngenioSpec's patented technologies in head-worn wearable products provide, among other things, elegant solutions, such as tracking health indicators, enabling hands-free phone conversations, enhancing hearing, and playing music and videos.

6. IngenioSpec's head-worn wearable products include electronic headsets, such as wireless earbuds. These earbuds allow a user to control operations simply by voice based on voice recognition or user physical interactions with the earbuds using touch-type control. These earbuds can offer dynamic noise cancellation. The life of the re-chargeable battery can be improved by sensing whether an earbud is being worn, with power utilization adjusted accordingly. If the earbud's battery level is low, the earbud can be easily re-charged by placing it into a charging case. The earbuds can be used in conjunction with a device, such as a mobile phone.

7. IngenioSpec's technology can also enable users to send and receive text messages, answer a call, or manage a notification. Further, text messages can be converted to voice, and voice messages can be converted to text, to enhance hands-free operations.

8. IngenioSpec's technology can also promote user health. For example, the technology includes hearing assistance features to address mild and moderate hearing loss, by dynamically adjusting audio output from an earbud according to its user's hearing profile. The headset can also be used to measure its user's heart rate and monitor the user's activity. During workouts, the headset can track and send your heart rate with exercise data to a mobile phone to

promote your health.

9. On information and belief, Apple is a corporation organized under the laws of the State of California, having its place of business at 1 Apple Park Way in Cupertino, California 95014.

**JURISDICTION AND VENUE**

10. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs as fully set forth herein.

11. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

12. Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b). On information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and/or importing products that infringe Plaintiff's patents as set forth below. As set forth above, Defendant has many regular and established places of business in this District.

13. The Court has personal jurisdiction over Defendant consistent with the Texas Long Arm Statute and the Due Process Clause of the Fourteenth Amendment. Defendant has purposely availed themselves of the benefits and protections of Texas. Defendant has maintained a presence in this District for years. Defendant conducts continuous and systematic business in this District, including, among other acts, offering infringing products and services to those residing in this District and soliciting business from people residing in this District. Defendant makes infringing sales of the accused products in this District. Defendant has committed infringing acts within the

Western District of Texas giving rise to this action and has established minimum contacts within the forum state of Texas.

14. This Court has general jurisdiction over Defendant due to its continuous and systematic contacts with the State of Texas, including its ownership and/or lease of land in the State of Texas, and other business activities throughout the State of Texas.

15. On information and belief, Apple maintains many regular and established places of business within the Western District of Texas including: (1) offices at its two Austin campuses located at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W Parmer Lane, Austin, Texas 78729; (2) a manufacturing facility in Austin; (3) an engineering center at 320 S. Capital of Texas Hwy, West Lake Hills, Texas 78746; and (4) retail stores located at (a) 2901 S. Capital of Texas Highway, Austin, Texas 78746, (b) 3121 Palm Way, Austin, Texas 78758, (c) 7400 San Pedro Avenue, San Antonio, Texas 78216, (d) 15900 La Cantera Parkway, San Antonio, Texas 78256, and (e) 8401 Gateway Boulevard West, El Paso, Texas 79925. On information and belief, and according to publicly available reports, the Apple Austin campus at 6900 W Parmer Lane initially employed over 5,000 people with the ability to employ up to 15,000 people. *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/ (last visited May 27, 2025).

16. On information and belief, Apple develops, makes, uses, imports, offers for sale, and/or sells in Texas and the Western District of Texas devices such as AirPods that infringe the Asserted Patents.

17. Apple employs hardware engineers in Austin, Texas, who work on accused products such as AirPods as evidenced by recent Apple job postings:

- *System Electrical Engineer (AirPods)* ("The System Electrical Engineer position at Apple involves working within a dynamic engineering team focused on developing future iPhone and AirPods products. The role encompasses the design, implementation, and integration of various analog function blocks and subsystems,

including power, audio, battery management, and sensors."). *See* https://www.tealhq.com/job/system-electrical-engineer-i-phone-and-air-pods_d57630c3-823e-401c-aa39-64411d475191 (last visited May 28, 2025).

- *AirPods Analog Engineer - General Analog* ("The AirPods Division at Apple is on the lookout for a dedicated System Electrical Engineer to join their dynamic and innovative engineering team. In this role, you will be instrumental in the design, implementation, and integration of various function blocks and subsystems that are critical to the development of AirPods products. Your responsibilities will encompass a wide range of tasks, including power management, audio systems, battery management, and sensor integration."). *See* https://www.tealhq.com/job/air-pods-analog-engineer-general-analog_5f1c7554-27c5-44d5-b918-59ff4fdb3018 (last visited May 28, 2025).

- *SRAM Circuit Design Engineers* ("Be a part of a world-class silicon design team which delivered an incredible high performance M1 chip for our Mac line of products and chips for our flagship products (iPhone, iPad, Mac, Airpods, HomePod and Watch)."). *See* https://jobs.apple.com/en-us/details/200591587/sram-circuit-design-engineer?team=HRDWR and https://jobs.apple.com/en-us/details/200576358/sram-circuit-design-engineer?team=HRDWR (last visited May 28, 2025).

- *SoC Correlation Product Engineer* ("As part of our Silicon Technologies group, you'll help design and manufacture our next-generation, high-performance, power-efficient processor, system-on-chip (SoC). Joining this group means you'll be responsible for crafting and building the technology that operates Apple's devices. Together, you and your team will enable our customers to do all the things they love with their devices. We promote innovation and new technology. The people who work here have reinvented and defined entire industries with the Mac, iPhone, iPad, Apple TV, Apple Watch, AirPods, HomePod and a multitude of groundbreaking Accessories."). *See* https://jobs.apple.com/en-us/details/200604903/soc-correlation-product-engineer?team=HRDWR (last visited May 28, 2025).

- *SoC Characterization Product Engineer* ("Joining this group means you'll be responsible for crafting and building the technology that operates Apple's devices. Together, you and your team will enable our customers to do all the things they love with their devices. We promote innovation and new technology. The people who work here have reinvented and defined entire industries with the Mac, iPhone, iPad, Apple TV, Apple Watch, AirPods, HomePod and a multitude of groundbreaking Accessories."). *See* https://jobs.apple.com/en-us/details/200593548/soc-characterization-product-engineer?team=HRDWR (last visited May 28, 2025).

18. The Western District of Texas has been established as an appropriate venue for patent infringement cases against Apple in other cases. For example, in *Carbyne Biometrics, LLC*

*v. Apple Inc.*, No. 1:23-cv-00324-ADA, Dkt. 84 (W.D. Tex. Feb. 12, 2024), Hon. Alan D Albright denied Apple's motion to transfer the case to the Northern District of California. The Federal Circuit upheld this decision, denying Apple's petition for a writ of mandamus seeking to reverse the district court's ruling. *See In re Apple Inc.*, No. 2024-111, 2024 WL 1153977 (Fed. Cir. Mar. 18, 2024). Accordingly, the Western District of Texas is the proper venue for IngenioSpec's action against Apple, consistent with the facts and reasoning in the *Carbyne* litigation.)

19. In addition, various relevant third-party witnesses are located in Austin, Texas, including for example, Arm, Inc. and its affiliate Arm, Ltd., located at Encino Trace, 5707 Southwest Pkwy Bld 1 Suite 100, Austin, TX 78735, https://careers.arm.com/usa-austin-office, which have a large facility located in Austin and upon information and belief provide architecture for the H1 chip(s) used in the accused products.

**PATENTS-IN-SUIT**

20. IngenioSpec is the owner of all right, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,582,789, titled "Hearing Enhancement Systems," and issued November 12, 2013. A copy of the '789 patent is attached as Exhibit A.

21. IngenioSpec is the owner of all right, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 11,644,693, titled "Wearable Audio System Supporting Enhanced Hearing Support," and issued May 9, 2023. A copy of the '693 patent is attached as Exhibit B.

22. IngenioSpec is the owner of all right, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 11,921,355, titled "Head-Worn Personal Audio Apparatus Supporting Enhanced Hearing Support," and issued

March 5, 2024. A copy of the '355 patent is attached as Exhibit C.

## COUNT I

(INFRINGEMENT OF U.S. PATENT NO. 8,582,789)

23. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

24. The claims of the '789 patent, as issued by the United States Patent and Trademark Office, are presumed valid under statute. They are not directed to abstract ideas and, moreover, contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent-ineligible concept itself. The written description of the '789 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improves upon what may have been considered conventional or generic in the art at the time of the invention.

25. On information and belief, Apple makes, uses, offers for sale, sells, and/or imports hearing enhancement systems including an audio system configured to receive input signals for broadcasting and up-convert the received input signals, and a wireless receiver configured to wirelessly receive the up-converted signals, to be down-converted and modified based on a at least one hearing characteristic of the user. These products include, without limitation, the Apple AirPods, AirPods Pro and iPhones (collectively, the "'789 Accused Products"), and they directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '789 patent. Identification of additional '789 Accused Products may be provided in infringement contentions disclosed pursuant to the Court's scheduling order.

26. On information and belief, the '789 Accused Products satisfy all claim limitations

of one or more claims of the '789 patent, including claim 1, as set forth in the preliminary infringement claim chart attached as Exhibit D.

27. Apple also knowingly and intentionally induces infringement of one or more claims of the '789 patent in violation of 35 U.S.C. § 271(b). For a period of time before this case was filed, and through at least the filing and service of this Complaint, Apple has had knowledge of the '789 patent and the infringing nature of the '789 Accused Products. Despite this knowledge, Apple continues to make, use, sell, and offer for sale the '789 Accused Products, and to actively encourage and instruct customers and other companies to make, use, sell, import, and offer for sale the '789 Accused Products in ways that directly infringe the '789 patent. Apple does so knowing and intending that these companies and their customers will commit these infringing acts.

28. By making, using, offering for sale, selling, and/or importing into the United States the '789 Accused Products, Apple has injured Plaintiff and is liable for infringement of the '789 patent pursuant to 35 U.S.C. § 271.

29. As a result of Apple's infringement of the '789 patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Apple's infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

30. Apple's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '789 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

31. Apple also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously, and wantonly continues to infringe the '789 patent through making, using,

selling, offering to sell, and/or importing '789 Accused Products with knowledge that these activities infringe the '789 patent. Plaintiff is therefore entitled to enhanced damages.

## COUNT II

(INFRINGEMENT OF U.S. PATENT NO. 11,644,693)

32. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

33. The claims of the '693 patent, as issued by the United States Patent and Trademark Office, are presumed valid under statute. They are not directed to abstract ideas and, moreover, contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent-ineligible concept itself. The written description of the '693 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improves upon what may have been considered conventional or generic in the art at the time of the invention.

34. On information and belief, Apple makes, uses, offers for sale, sells, and/or imports personal audio systems, including ear buds and a mobile communication device, capable of providing enhanced hearing support. These products include, without limitation, the Apple AirPods, AirPods Pro, and iPhones (collectively, the "'693 Accused Products"), and they directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '693 patent. Identification of additional '693 Accused Products may be provided in infringement contentions disclosed pursuant to the Court's scheduling order.

35. On information and belief, the '693 Accused Products satisfy all claim limitations of one or more claims of the '693 patent, including claim 1, as set forth in the preliminary

infringement claim chart attached as Exhibit E.

36. Apple also knowingly and intentionally induces infringement of one or more claims of the '693 patent in violation of 35 U.S.C. § 271(b). For a period of time before this case was filed, and through at least the filing and service of this Complaint, Apple has had knowledge of the '693 patent and the infringing nature of the '693 Accused Products. Despite this knowledge, Apple continues to make, use, sell, and offer for sale the '693 Accused Products, and to actively encourage and instruct customers and other companies to make, use, sell, import, and offer for sale the '693 Accused Products in ways that directly infringe the '693 patent. Apple does so knowing and intending that these companies and their customers will commit these infringing acts.

37. By making, using, offering for sale, selling, and/or importing into the United States the '693 Accused Products, Apple has injured Plaintiff and is liable for infringement of the '693 patent pursuant to 35 U.S.C. § 271.

38. As a result of Apple's infringement of the '693 patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Apple's infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

39. Apple's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '693 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

40. Apple also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously, and wantonly continues to infringe the '693 patent through making, using, selling, offering to sell, and/or importing '693 Accused Products with knowledge that these

activities infringe the '693 patent. Plaintiff is therefore entitled to enhanced damages.

## COUNT III

(INFRINGEMENT OF U.S. PATENT NO. 11,921,355)

41. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

42. The claims of the '355 patent, as issued by the United States Patent and Trademark Office, are presumed valid under statute. They are not directed to abstract ideas and, moreover, contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent-ineligible concept itself. The written description of the '355 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improves upon what may have been considered conventional or generic in the art at the time of the invention.

43. On information and belief, Apple makes, uses, offers for sale, sells, and/or imports head-worn personal electronic apparatuses, including those with speakers and wireless receivers, capable of providing enhanced hearing support. These products include, without limitation, the Apple AirPods and AirPods Pro (collectively, the "'355 Accused Products"), and they directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '355 patent. Identification of additional '355 Accused Products may be provided in infringement contentions disclosed pursuant to the Court's scheduling order.

44. On information and belief, the '355 Accused Products satisfy all claim limitations of one or more claims of the '355 patent, including claim 17, as set forth in the preliminary infringement claim chart attached as Exhibit F.

45. Apple also knowingly and intentionally induces infringement of one or more claims of the '355 patent in violation of 35 U.S.C. § 271(b). For a period of time before this case was filed, and through at least the filing and service of this Complaint, Apple has had knowledge of the '355 patent and the infringing nature of the '355 Accused Products. Despite this knowledge, Apple continues to make, use, sell, and offer for sale the '355 Accused Products, and to actively encourage and instruct customers and other companies to make, use, sell, import, and offer for sale the '355 Accused Products in ways that directly infringe the '355 patent. Apple does so knowing and intending that these companies and their customers will commit these infringing acts.

46. By making, using, offering for sale, selling, and/or importing into the United States the '355 Accused Products, Apple has injured Plaintiff and is liable for infringement of the '355 patent pursuant to 35 U.S.C. § 271.

47. As a result of Apple's infringement of the '355 patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Apple's infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

48. Apple's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '355 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

49. Apple also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously, and wantonly continues to infringe the '355 patent through making, using, selling, offering to sell, and/or importing '355 Accused Products with knowledge that these activities infringe the '355 patent. Plaintiff is therefore entitled to enhanced damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Court:

A.	A judgment that each defendant is liable for infringement of one or more claims of the Asserted Patents;

B.	Compensatory damages in an amount according to proof, and in any event no less than a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

C.	A judgment and order finding that Apple has willfully infringed the Asserted Patents and requiring Apple to pay enhanced damages pursuant to 35 U.S.C. § 284;

D.	That the Court declare this an exceptional case and award Plaintiff its attorneys' fees, as provided by 35 U.S.C. § 285 and that Plaintiff be awarded enhanced damages up to treble damages for willful infringement as provided by 35 U.S.C. § 284; and

E.	A judgment granting Plaintiff such further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.

Dated: June 5, 2025

/s/ Mark D. Siegmund
Robert F. Kramer (*pro hac vice* forthcoming)
rkramer@krameralberti.com
**KRAMER ALBERTI LIM & TONKOVICH LLP**
950 Tower Lane, Suite 1725
Foster City, CA 94404
Telephone: (650) 825-4300
Facsimile: (650) 460-8443

Nicole Glauser
Texas State Bar No. 24050694
nglauser@krameralberti.com
**KRAMER ALBERTI LIM & TONKOVICH LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (737) 256-7784
Facsimile: (650) 460-8443

Mark D. Siegmund
TX Bar No. 24117055
msiegmund@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES PC**
7901 Fish Pond Rd., 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

*Attorneys for Plaintiff IngenioSpec, LLC*